**STATE of Indiana, Appellant–Plaintiff,**

v.

**Sabrina L. RUMPLE, Appellee–Defendant.**

No. 02A05–9906–CR–262.

Court of Appeals of Indiana.

Feb. 9, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, for Attorney for Appellant.

Patrick J. Arata, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

The State charged Sabrina A. Rumple with operating a vehicle while intoxicated. The evidence against Rumple included the results of a breath test measuring blood-alcohol content (BAC), which was administered on a BAC DataMaster machine. Prior to trial, Rumple submitted a motion to suppress the results of the BAC Data-Master test. The trial court granted the motion and the State now appeals that ruling. The specific issue before this court may be stated as follows:

Did the trial court err in concluding that, pursuant to applicable Indiana statutory and regulatory provisions, the simulator solutions used to calibrate a BAC DataMaster machine must be independently tested and certified by the Department of Toxicology, and that a failure to present evidence of such testing renders inadmissible the results of a breath test administered on a BAC DataMaster machine?

We reverse.

The facts are that on October 5, 1998, Officer Karl Niblick of the Fort Wayne Police Department observed as Rumple operated a vehicle on Interstate Highway 69 at a high rate of speed and nearly caused an accident. Officer Niblick stopped Rumple, and she agreed to take a BAC DataMaster test. The test results indicated that Rumple had a BAC of .14%. The State charged her with operating a vehicle while intoxicated.

Rumple filed a motion to suppress the test results. The trial court granted the motion, explaining its decision as follows:

5. The Defendant moves to suppress the breath test result on essentially three grounds:

a) That the Department of Toxicology has failed to promulgate regulations reflecting the change in the statutory language in I.C. 9–30–5–1 which took effect on July 1, 1997.

b) That the State Department of Toxicology's methods used to test the equipment for certification fall short of accepted scientific principles.

c) That the Department of Toxicology has failed to independently test and certify the simulator solutions.

6. The 1997 amendment of I.C. 9–30–5–1 made it an offense to operate a motor vehicle if the individual's blood alcohol content was .10 percent or more per two hundred and ten liters of breath or if the blood alcohol content was .10 percent or more per 100 milliliters of blood. Prior to 1997 it was an offense to operate a motor vehicle if the individuals [sic] blood alcohol content was .10 percent or more by weight of alcohol in his blood.

7. The BAC DataMaster in this cause printed a ticket expressing the defendant's blood alcohol content per two hundred and ten liters of breath. The DataMaster had been certified within 180 days of the Defendant's breath test and after the effective date of the 1997 amendment.

8. The 1997 amendment of I.C. 9–30–5–1 does not render the regulations previously adopted under I.C. 9–30–6–5 invalid. Because the BAC Data-Master was properly certified by the Department of Toxicology and the printed ticket states the defendant's blood alcohol content per two hundred and ten liters of breath the Court is required to take Judicial notice of the result.

9. The defendant has presented extensive evidence challenging the Department of Toxicology's methods used in the testing and certification of the BAC DataMaster. It is the defendant's position that the Department certification is not in accordance with accepted scientific principles.

10. The defendant specifically challenges the standards, controls, linearity and precision as it relates to the lack of duplicate testing used by the Department of Toxicology.

11. When the legislature passed I.C. 9–30–6–5 it granted the Department of Toxicology great leeway as to the adoption of standards. Because the certification process used by the department is in compliance with the standards adopted the defendant's challenge must fail.

12. 2[6]0 IAC 1.1–2–1 and 2[6]0 IAC 1.1–2–2 set out the requirements for inspecting and certification of the chemicals used as simulators for the certification of breath test equipment. It is required that the Department of Toxicology independently test and certify the simulator.

13. The only evidence submitted indicates that the Guth simulators were certified by the manufacturer but not independently tested and certified by the Department of Toxicology.

14. The proponent of evidence is responsible for showing it's [sic] admissibility. Because the State of Indiana has failed to present any evidence to show the regulation has been complied with the Court must grant the Defendant's Motion to Suppress.

*Record* at 128–30.

We agree with the trial court's conclusions regarding the first two contentions upon which Rumple's motion to suppress was premised. That is, the Department of Toxicology did not fail to promulgate appropriate regulations and the methods used to test the equipment for certification were not inadequate. We conclude, however, the trial court erred with respect to Rumple's third argument.

■ Concerning the third argument, the trial court agreed with Rumple's contention that the Department of Toxicology failed to independently test and certify the simulator solutions, and that such rendered the results of the BAC DataMaster inadmissible. We must examine Ind.Code Ann. § 9–30–6–5 (West Supp.1999) in the context of the relevant administrative regulations in order to determine whether those materials require independent testing and certification of the simulator solutions pursuant to 260 IAC 1.1–2–1 and –2, therefore also requiring proof of same prior to admission of the breath test results into evidence.

■ We are called upon to construe the meaning of IC § 9–30–6–5. The interpretation of a statute is a legal question, and is reviewed de novo. *State v. Hensley,* 716 N.E.2d 71 (Ind.Ct.App.1999). When construing a statute, our primary task is to give effect to the intent of the legislature. *State v. Maillard,* 695 N.E.2d 637 (Ind.Ct. App.1998), *trans. denied.* We consider the plain, ordinary meaning of words and phrases used in a statute "to discern the

legislature's intent and we presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals." *Id.* at 640. In construing a provision, we will assume that the legislature did not enact a useless provision. *Robinson v. Wroblewski,* 704 N.E.2d 467 (Ind. 1998). Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless, if it can be reconciled with the rest of the statute. *State v. Hensley,* 716 N.E.2d 71.

IC § 9–30–6–5(d) provides that results of chemical breath tests are not admissible in evidence if:

(1) the test operator;

(2) the test equipment;

(3) the chemicals used in the test, if any; or

(4) the techniques used in the test;

have not been approved in accordance with the rules adopted under subsection (a).

Pursuant to the mandate in IC § 9–30–6–5(a), the Department of Toxicology promulgated rules governing the inspection and certification of breath test equipment. Those rules, which may be found at 260 IAC 1.1–2–1 and 260 IAC 1.1–2–2, state, in pertinent part:

(a) All breath test equipment approved by the director shall be inspected at least once each 180 days at their usual location (building). If such location (building) is changed, the equipment must be reinspected before it can be certified for use.

(b) Such inspection shall include verification that the equipment is in good operating condition and satisfies the accuracy requirements set out in subsection (e)(2).

(c) Only persons authorized by the director of the state department of toxicology of Indiana University School of Medicine shall inspect approved breath test equipment for certification.

(d) All such authorized inspectors shall report their findings to the director.

(e) Breath test equipment shall meet the following standards:

(1) Tests shall be made using a known ethanol-water or ethanol-gas solution to simulate an ethanol-breath solution.

(2) Such test results shall not deviate more than minus eight percent (–8%) from the known alcohol content of the ethanol-water or ethanol-gas test solution.... No test result for purpose of certification shall exceed the known ethanol content of the test solution.

(3) For the purpose of inspecting the breath test equipment, the analytical result shall be expressed to the third decimal place.

(f) Chemicals (if required) shall be of sufficient strength and quality to allow the breath test device to operate in the manner specified in subsection (e)(2). This requirement is deemed to have been satisfied if the ampoule lot number has been certified after examination in the state department of toxicology.

260 IAC 1.1–2–1.

(a) All breath test equipment and/or chemicals shall be certified as to compliance with standards specified in 260 IAC 1.1–2–1(e) and (f) at least once each 180 days.

(b) The certification of inspection and compliance of breath test equipment and/or chemicals shall be in writing by the director of the state department of toxicology of Indiana University School of Medicine.

(c) Such certification shall be based on information provided by authorized inspectors and any other evidence the director, at his discretion, may require.

(d) The current certificate of inspection and compliance shall be sent to the clerk of the circuit court in the county in which the instrument and/or chemicals are used. All certificates of inspection shall remain on file in the Indiana University School of Medicine and shall be made available to anyone for viewing only during regular officer hours.

260 IAC 1.1–2–2.

Pursuant to the regulations reproduced above, the Department of Toxicology is required to periodically test breath-test machines by using a simulator solution. The critical question here is whether "the chemicals" referred to in IC § 9–30–6–5(d)(3) include the simulator solution. If so, then according to IC § 9–30–6–5(a) and (d)(3), the simulator solution must comply with the procedures set out in 260 IAC 1.1–2–1 and –2 with respect to certification and testing. The trial court determined that "the chemicals" referred to in IC § 9–30–6–5(d)(3) includes the simulator solution used to calibrate the BAC DataMaster machine. Therefore, according to the trial court, the BAC DataMaster breath test is inadmissible unless the State demonstrates that the simulator solution was approved in accordance with the rules adopted under IC § 9–30–6–5(a), i.e., 260 IAC 1.1–2–1 and –2.

It appears that three machines have predominantly been used to conduct BAC tests in Indiana. Those machines include the Breathalyzer, the BAC DataMaster, and the Intoxilyzer. Pursuant to Indiana statutory and regulatory law, the inspection process for all three machines requires the use of either an ethanol-water or ethanol-gas simulator solution. 260 IAC 1.1–2–1(e)(1). Of the three machines, only the Breathalyzer requires the use of chemicals to administer the actual breath test itself. According to 260 IAC 1.1–4–1, the operator of a Breathalyzer machine must insert ampoules of fluid chemicals into the machine at the time of testing. Such chemicals are not necessary when administering a breath test with a BAC DataMaster. 260 IAC 1.1–4–7 and –8.

The qualifying phrase, "if any," in IC § 9–30–6–5(d)(3) when referring to chemicals used in "the test," indicates that chemicals are sometimes, but not always, used in the context to which the statute is addressed. As reflected above, chemicals are *always* used in calibrating a breath test machine, but only *sometimes* used in administering the actual breath test itself. If the "chemicals" in IC § 9–30–6–5(d)(3) were construed to refer to the simulator solution chemicals used to calibrate machines that measure BAC, the "if any" in that provision would be rendered superfluous because chemicals are always used in that process, no matter what machine is being tested. On the other hand, some machines use chemicals in administering the breath test, and some do not. Thus, in order to give meaning to the qualifying phrase "if any," we conclude that IC § 9–30–6–5(d)(3) refers to the chemicals used in a breath test machine when administering the actual breath test.

Our interpretation is supported contextually by the remainder of IC § 9–30–6–5(d). The subject of subsection (d) is identified at its beginning as the "[r]esults of chemical tests" involving a person's breath. According to subsection (d), those results are not admissible if "the test" (1) operator, (2) equipment, and the (3) chemicals and (4) techniques used in "the test" have not been approved according to the appropriate procedures. It is apparent that "the test" in this context refers to the breath test itself, and not to any test that might be performed on the machine used to administer the breath test.

Because IC § 9–30–6–5(d)(3) does not refer to the simulator solution used to test the BAC DataMaster, IC § 9–30–6–5(a), which governs the approval and certification of chemicals used in BAC breath tests, is not applicable. The trial court's conclusion to the contrary was erroneous.

■ We have previously stated that the trial court did not err in denying Rumple's motion to suppress to the extent that the motion was premised upon the contentions that (1) the Department of Toxicology failed to promulgate appropriate regulations and (2) that the Department of Toxicology's certification testing methods fall short of accepted scientific principles.[1] Having decided that the trial court erred in determining that the Department of Toxicology was required to present evidence that the simulator solution used to calibrate the BAC DataMaster in question complied with the procedures set out in 260 IAC 1.1–2–1 and –2, we must reverse the grant of Rumple's motion to suppress.

Judgment reversed.

GARRARD, J., and DARDEN, J., concur.

---

1. With respect to the latter argument, Rumple discusses in great detail the alleged inadequacies in the Department of Toxicology's testing of the BAC DataMaster machine in question. However, at the hearing on Rumple's motion to suppress, the State introduced into evidence a document generated by the Indiana University School of Medicine and sent to the Clerk of the Circuit Court of Allen County. That document stated:

> CERTIFICATE OF INSPECTION AND COMPLIANCE OF BREATH TEST INSTRUMENTS FOR USE PURSUANT TO THE INDIANA LAW FOR IMPLIED CONSENT TO TEST FOR INTOXICATION
>
> Pursuant to the authority granted by I.C. § 9–30–6–5 (1991), and the Regulations promulgated thereto, 260 IAC 1.1, inspection and tests of the following instrument were conducted on the date below shown, the results of which are hereby certified, to-wit:
>
> The instrument is in good operating condition, satisfying the accuracy require-

ments set out by State Department of Toxicology Regulations.

| DATE | INSTRUMENT IDENTIFICATION | LOCATION |
|---|---|---|
| 6/17/98 | 881324 | Fort Wayne Police Department |

/s/ James E. Klaunig
James E. Klaunig, Ph.D
Professor and Director of Toxicology
Director, State Department of Toxicology
*Record* at 212.

The above document constituted prima facie evidence that the certification test was conducted pursuant to the relevant regulations. At the most, Rumple's challenge to the certification testing created an issue to be decided by the trier of fact, *i.e.*, was the BAC DataMaster machine used in Rumple's case functioning properly at the time of his test? *See Mullins v. State*, 646 N.E.2d 40 (Ind. 1995). The trial court did not err in determining that Rumple had not carried her burden with respect to the specific BAC DataMaster machine in question by attacking generally the Department of Toxicology's testing methods.