**John P. WRAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 54A01–0012–CR–432.**

Court of Appeals of Indiana.

May 14, 2001.

Publication Ordered June 14, 2001.

John L. Tompkins, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John P. Wray appeals his conviction for operating a vehicle with a blood alcohol

content of at least ten-hundredths percent (0.10%), a Class C misdemeanor. We reverse.

## Issue

The dispositive issue before us is whether the trial court erred in admitting into evidence State's exhibit number three, a "Breath Test for Intoxication Recertification" letter indicating Wray's arresting officer was certified by the department of toxicology to operate breath test instruments.

## Facts

On November 10, 1999, Officer Dan Edwards of the Crawfordsville Police Department stopped Wray's vehicle. After observing possible signs of intoxication, Edwards administered a portable breath test that indicated Wray's blood alcohol content was .142 percent. Edwards then transported Wray to the Montgomery County jail where he administered another breath test, which indicated a blood alcohol content of .16 percent.

At a bench trial, when the State sought to introduce Edwards' breath test operator recertification into evidence, the following colloquy between defense counsel and Edwards took place:

Q: Officer, do you receive training in pharmacology of alcohol?

A: No, I do not.

Q: Do you receive training in the theory of operation of breath test equipment?

A: No, sir.

Q: How about in the care and maintenance of breath test equipment?

A: No, sir. In fact, we were instructed during the class that if that comes up in court that it would be recommended that a certified instrument maintenance officer or person be subpoenaed to court. We are only trained on how to give to [sic] test.

Q: Have you received training in the legal aspects of breath testing?

A: No.

Q: How about in the interpretation of breath test results?

A: No.

Q: In any part of your training, do you use a human being that had consumed a known dose of alcohol and then was later tested on a certified machine?

A: Yes.

Record pp. 75–76. The trial court overruled defense counsel's subsequent hearsay objection to the introduction of the department of toxicology's recertification letter for Officer Edwards. Wray was found not guilty of operating while intoxicated, but guilty of operating with 0.10% of alcohol in his breath or blood. This appeal ensued.

## Analysis

■■■ A trial court has broad discretion in ruling on the admissibility of evidence, and on review, we will only disturb a trial court's ruling upon a showing of abuse of discretion. *Sparkman v. State,* 722 N.E.2d 1259, 1262 (Ind.Ct.App.2000). When reviewing a trial court's decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the trial court's decision. *Id.* At trial, Wray objected to admission of the recertification letter on the basis that it was hearsay and did not fall within the public records hearsay exception because the letter lacked trustworthiness. The State responded that the letter was admissible under the specific statute governing breath test operator certificates, Indiana Code Section 9–30–6–5, and the trial court agreed. We conclude, however, that the certificate was inadmissible and that the trial court abused its discretion in ruling otherwise.

Indiana Evidence Rule 803(8) provides in part that the following is not excluded by the hearsay rule:

Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities....

Indiana Code Section 9–30–6–5 provides in part:

(a) The director of the department of toxicology of the Indiana University school of medicine *shall* adopt rules under IC 4–22–2 concerning the following:

(1) Standards and regulations for the:

(A) selection;

(B) training; and

(C) certification;

of breath test operators.

\* \* \* \* \*

(c) Certified copies of certificates issued *in accordance with rules adopted under subsection (a):*

(1) are admissible in a proceeding under this chapter, IC 9–30–5, or IC 9–30–9; . . . and

\* \* \* \* \*

(4) constitute prima facie evidence that the breath test operator was certified by the department of toxicology on the date specified on the certificate.

(d) Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this chapter, IC 9–30–5, or IC 9–30–9 if:

(1) the test operator . . .

[has] not been approved *in accordance with the rules adopted under subsection (a).*

(Emphases added.) Finally, the rules promulgated by the department of toxicology pursuant to the above statute provide in part:

(a) Any person to be certified as a breath test operator analyzing breath for ethanol must attend a course in the theory and operation of test devices approved by the director of the state department of toxicology.

(b) Such a course shall include a minimum of twenty (20) hours of instruction.

(c) Such instruction *shall* be devoted to lectures, laboratory training, and demonstrations *in accordance with the following:*

(1) The pharmacology of alcohol.

(2) The theory, operation, and care of the breath test equipment.

(3) The legal aspects of breath testing for ethanol.

(4) The interpretation of breath test results.

(5) Laboratory training using an approved device to analyze breath for alcohol:

(A) using known ethanol—water or ethanol—gas solutions;

(B) on a human who has consumed a test dose of ethanol.

260 Ind.Admin.Code § 1.1–1–2 (emphases added).

At trial, Wray claimed the department of toxicology's letter was untrustworthy, and therefore did not fall under the public records hearsay exception, because it states that Officer Edwards was a certified breath test operator "[p]ursuant to the authority granted by IC 9–30–6–5 (1991), *and the regulations promulgated thereto, 260 IAC 1.1 . . . .*," record p. 154 (emphasis added), yet Officer Edwards unequivocally testified that he had not received training in four of the five areas that the regulations require breath test operators to receive: the pharmacology of alcohol, the theory and care of breath test equipment,

the legal aspects of breath testing, and the interpretation of test results.[1]

▮▮▮ Without addressing the trustworthiness of the recertification letter and whether it fell under the public records hearsay exception, the trial court ruled it was admissible pursuant to Indiana Code Section 9–30–6–5(c). After reviewing the statute, we do not agree. When construing a statute, our primary task is to give effect to the intent of the legislature. *State v. Rumple*, 723 N.E.2d 941, 943 (Ind. Ct.App.2000). We consider the plain, ordinary meaning of words and phrases used in a statute to discern the legislature's intent, and we presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.* at 943–44. In construing a provision, we will assume that the legislature did not enact a useless provision. *Id.* at 944. Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless, if it can be reconciled with the rest of the statute. *Id.* We have held that "[t]he statute and regulations governing the administration of breathalyzer tests clearly contemplate strict compliance...." *State v. Johanson*, 695 N.E.2d 965, 967 (Ind.Ct.App.1998).

▮▮▮ Our legislature delegated responsibility for setting standards for the training of breath test operators to the department of toxicology, which possesses expertise in this area. We assume that in promulgating Section 1.1–1–2 of Title 260 of the Indiana Administrative Code, the department set forth the training that it believes breath test operators should receive before they can be considered certified and, therefore, before the results of tests that they administer may be admitted into evidence in a criminal drunk driving proceeding. We will not second-guess these training rules and whether training in all five of the specified areas are truly required in order for a breath test operator to reliably administer a test, for to do so would require us to effectively engage in impermissible judicial rule promulgation. Additionally, Indiana Code Section 9–30–6–5(c) states that only those certificates issued *"in accordance with the rules adopted under subsection (a)"* may be admitted into evidence. In order to give effect to this highlighted statutory language and to not render it meaningless, we must hold that where, as here, there is uncontradicted evidence that a "certified" breath test operator was in fact not trained in accordance with the department of toxicology's regulations regarding training, a breath test operator certificate that indicates otherwise is not admissible under Indiana Code Section 9–30–6–5(c).

The State cites several cases where this court and our supreme court have affirmed the admission of breath test operator certificates: *Platt v. State*, 589 N.E.2d 222 (Ind.1992); *Nasser v. State*, 646 N.E.2d 673 (Ind.Ct.App.1995); *Regan v. State*, 590 N.E.2d 640 (Ind.Ct.App.1992); *English v. State*, 603 N.E.2d 161 (Ind.Ct.App.1992). None of those cases are on point, as they do not address a situation where the uncontradicted evidence indicates that a breath test operator was not trained in accordance with the applicable regulations. In fact, we noted in *Regan* that the record revealed the operator was *"properly* certi-

---

1. We take issue with the State's characterization of Officer Edwards' testimony as merely indicating that he did "not remember certain parts of his training," and that such forgetfulness was "of no moment." Appellee's Brief p. 6. Edwards did not testify that he forgot part of his training, but clearly and directly stated he did not receive training in four of the five areas. Similarly, we also strongly disagree that Edwards was "not equipped to answer questions regarding the training he ... received." Appellee's Brief p. 7.

fied." *Regan*, 590 N.E.2d at 645 (emphasis added). We also concluded in *English* that the operator was "[c]leary ... *properly* certified." *English*, 603 N.E.2d at 163 (emphasis added). Such was not the case here.

■■■■ Having concluded Officer Edwards' breath test operator certificate was inadmissible given the available facts, we consider whether the erroneous introduction of the certificate constitutes reversible error. Where evidentiary error has occurred, reversal is not required if it is apparent that the fact finder did not rely upon the improper evidence in reaching the judgment. *O'Neal v. State*, 716 N.E.2d 82, 86 (Ind.Ct.App.1999). In determining whether improper evidence was relied upon in reaching a judgment, we should consider the probable impact of the evidence upon the fact finder. *Id.* This court may conclude that the trial court did not rely upon improper evidence where there was other overwhelming evidence of guilt. *Id.*

We conclude the error here was reversible and not harmless. Without introduction of the recertification letter, and with Officer Edward's testimony that he did not receive training in four of the five areas required by the department of toxicology for breath test operator certification, there was no evidence that Edwards a "test operator ... approved in accordance with the [department of toxicology's] rules," in which case the results of the chemical tests involving an analysis of Wray's breath were also inadmissible pursuant to Indiana Code Section 9–30–6–5(d). We are aware that in this particular case there was other evidence suggesting Wray may have been operating while intoxicated on the night in question, including slurred speech, lack of balance and coordination, several failed field sobriety tests, and an admission by Wray that he had drunk two or three beers. However, the trial court found Wray not guilty of operating while intoxicated and only convicted him of operating with 0.10% of alcohol in his blood or breath. Without evidence of Wray's blood or breath alcohol content pursuant to a chemical analysis, we are unable to affirm his conviction. *See Melton v. State*, 597 N.E.2d 359, 361 (Ind.Ct.App.1992), *trans. denied.*

### Conclusion

The trial court abused its discretion in admitting Officer Edwards' breath test operator certificate into evidence in light of his uncontradicted testimony indicating he did not receive training required by the rules promulgated by the department of toxicology. This error was not harmless.

Reversed.

DARDEN, J., and NAJAM, J., concur.

### *ORDER*

This court having heretofore handed down its opinion in this cause on May 14, 2001, marked Memorandum Decision, not for Publication; and,

Comes not the Appellant, by counsel, and files herein Motion to Publish Decision, alleging therein that this Court's decision dealt with 260 Ind. Admin. Code § 1.1–1–2, which section is cited in all certification/recertification certificates issued by the Indiana Department of Toxicology purporting to evidence a police officer's training and certification to administer chemical breath tests in the State of Indiana; that the issue, which was decided in this appeal is an issue that is present in every operating a motor vehicle with a blood alcohol level of .10 or greater case filed by the State of Indiana; that counsel is not aware of any reported decision in the State of Indiana addressing the issues that were addressed in this case and prays that this Court publish the decision, which

said Motion is in the following words and figures, to-wit:

And the Court, having examined said Motion and being duly advised, now finds that said Motion should be granted, and this Court's opinion heretofore handed down as a Memorandum Decision should now be ordered published.

IT IS THEREFORE ORDERED as follows:

The Appellant's Motion to Publish Decision is granted and this Court's opinion heretofore handed down in this appeal on May 14, 2001, marked Memorandum Decision, Not for Publication, is now ordered published.