**Maria Dawn BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 47A05–0110–CR–464.**

Court of Appeals of Indiana.

Sept. 16, 2002.

---

Samuel S. Shapiro, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Maria Dawn Brown brings this discretionary interlocutory appeal[1] from the trial court's denial of her motion to suppress. In an issue of first impression under Indiana's implied consent law,[2] we address the question of whether the implied consent law precludes the use of a search warrant to obtain a blood sample after a request to submit to a chemical test has been refused. We conclude that it does not.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 28, 1999, Lawrence County Sheriff's Deputy James Slone observed Brown disregard a stop sign. Deputy Slone initiated a traffic stop, during which Brown refused to remain in her car, tried to walk away, and refused to provide her license, registration, name, or date of birth. After Slone placed Brown under arrest, he noticed that Brown had the odor of an alcoholic beverage on her breath and that her eyes were glassy and bloodshot. Slone administered six field sobriety tests, of which Brown failed two. A preliminary breath test indicated Brown's blood alcohol content was .15 percent. Slone asked Brown to take a formal breath test and read the implied consent law to her twice, but Brown refused to take the test. At this point, Slone applied for and received a search warrant from Lawrence Superior Court Judge William G. Sleva to obtain a sample of Brown's blood. The resulting chemical test of the sample of Brown's blood indicated that Brown's blood alcohol content was .13 percent. Brown was charged with operating a vehicle while intoxicated ("OWI") as a Class D felony.[3]

On July 24, 2001, Brown filed a motion to suppress the blood test evidence. Brown's motion was denied on October 1, 2001. Upon request from Brown, the trial court certified the order for interlocutory appeal. We accepted jurisdiction of the appeal on January 7, 2002.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we review the record for substantial evidence of probative value to support the trial court's determination. *State v. Morris*, 732 N.E.2d 224, 227 (Ind.Ct.App.2000). We do not reweigh the evidence or reassess the credibility of witnesses. *Id.* We resolve conflicting evidence in favor of the trial court and consider any substantial uncontrovert-

---

1. *See* Indiana Appellate Rule 14(B).

2. Ind.Code § 9–30–6–1 *et seq.*

3. We note that the State's charging information indicates that Brown was charged pursuant to Ind.Code § 9–30–5–4, which enhances an OWI to a felony when it involves serious bodily injury to another person. However, the parties have stipulated "that this case involved no accident, no serious bodily injury, and, no death." (Appellant's App. at 33.)

ed evidence. *Id.* Where the issue presented on appeal is a question of law, however, we review the matter *de novo.* *Id.* The interpretation of a statute is a legal question. *State v. Rumple,* 723 N.E.2d 941, 943 (Ind.Ct.App.2000). Therefore, our review is *de novo. Id.*

 The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Hendrix v. State,* 759 N.E.2d 1045, 1047 (Ind.2001). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *Id.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Rumple,* 723 N.E.2d at 944. In construing a provision, we will assume that the legislature did not enact a useless provision. *Id.* Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless, if it can be reconciled with the rest of the statute. *Id.*

Brown argues that once a driver has refused to submit to a chemical test, the implied consent law precludes a law enforcement officer from obtaining a search warrant to take a blood sample. The State, however, argues the blood test evidence is admissible because the warrant procedure is separate and distinct from the implied consent law. Therefore, it is necessary to determine whether the legislature, in enacting the implied consent law, intended to prevent a law enforcement officer from obtaining a search warrant once a driver has refused to submit to a chemical test.

 The implied consent law seeks to keep Indiana highways safe and protect the public by removing the threat posed by the presence of drunk drivers on the highways. *Justice v. State,* 552 N.E.2d 844, 848 (Ind.Ct.App.1990). It is aimed at providing law enforcement officers with implied consent to perform chemical tests[4] on drivers who are thought to be intoxicated. *Brown v. State,* 744 N.E.2d 989, 993 (Ind.Ct.App.2001).

The implied consent law provides that a person who operates a vehicle in Indiana impliedly consents to submit to a chemical test. Ind.Code § 9–30–6–1. If a driver refuses to submit to a chemical test, the arresting officer must inform the driver that a suspension of driving privileges will result upon the refusal to submit to a chemical test. Ind.Code § 9–30–6–7(a). Section 7(b) of the implied consent law states that:

> If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges or submits to a chemical test that results in prima facie evidence of intoxication, the arresting officer shall do the following:

> (1) Obtain the person's driver's license or permit if the person is in possession of the document and issue a receipt valid until the initial hearing of the matter held under IC 35–33–7–1.

> (2) Submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred.

---

**4.** "Chemical test" is defined as "an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance, or a drug." Ind.Code § 9–13–2–22. A law enforcement officer shall offer a chemical test when the officer has probable cause to believe a driver is intoxicated. Ind.Code § 9–30–6–2. The parties stipulate that Slone had probable cause to offer a chemical test to Brown.

(3) Send a copy of the probable cause affidavit submitted under subdivision (2) to the bureau.

If the probable cause affidavit indicates a refusal to submit to a chemical test, the Bureau of Motor Vehicles ("BMV") is required to suspend the person's driving privileges for one year. Ind.Code § 9–30–6–9(a)(1).

Brown relies on *Justice* in support of her contention that taking a sample of a driver's blood pursuant to a search warrant is precluded by the implied consent law. However, *Justice* did not involve a search warrant. 552 N.E.2d at 846–47. In *Justice,* after unsuccessful attempts to take a breath test, Justice initially agreed to submit to a blood test. However, once at the hospital, Justice refused to submit to the blood test. Without Justice's consent or a warrant, a law enforcement officer obtained a sample of Justice's blood.

On appeal, Justice argued the trial court erred in admitting evidence relating to the testing of his blood sample because the sample was obtained without his consent. The State, relying on *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), responded that the police were justified in obtaining the blood sample without Justice's consent because the law enforcement officer had probable cause to believe Justice had been driving while intoxicated and the presence of exigent circumstances negated the requirement of a search warrant. As stated in *Justice:*

> [T]he Supreme Court held in *Schmerber* that the police were justified in taking a nonconsensual blood test from the defendant who was undergoing treatment for injuries suffered in an accident involving the car he had apparently been driving. The court noted that the taking of a blood sample without permission did not violate the fourth amendment so long as the circumstances justified tak-

ing the sample, and the means and procedures used to obtain the sample were reasonable. The court found that the circumstances presented in *Schmerber* justified the taking of the sample because there was probable cause to believe Schmerber had been driving while under the influence of alcohol and the inevitable dissipation of alcohol in the blood created exigent circumstances.

552 N.E.2d at 847.

In *Justice,* we distinguished *Schmerber* on the grounds that Justice had not been in an accident. We stated that absent an auto accident the dissipation of alcohol in the blood does not alone create exigent circumstances. *Id.* We further noted:

> The standards set forth in *Schmerber* are the outer limits of what constitutes acceptable police behavior in obtaining blood samples from unwilling people. The states, however, are free to further limit police conduct within the confines of *Schmerber* . . . .

> Indiana's General Assembly invoked a valid exercise of its police power when it enacted the implied consent laws which define acceptable police behavior within the constitutional limits set forth in *Schmerber.* The implied consent laws seek to keep Indiana highways safe and protect the public by removing the threat posed by the presence of drunk drivers on the highways. The laws provide a statutory scheme through which drunk drivers can be removed from the road. . . . The statute clearly sets forth a police officer's duties when a person refuses to submit to a chemical test. The officer must first advise the person that his refusal to take the test will result in the suspension of his driving privileges. If the person still refuses to consent to a chemical test, the officer must then obtain his driver's license, issue a receipt, and submit a probable cause affidavit to

the prosecuting attorney and the bureau of motor vehicles....

Officer Chatten's conduct in obtaining the blood sample from Justice violated the governing guidelines contained in the implied consent laws. The seizure of the blood sample was, therefore, unlawful. Evidence obtained by an unlawful seizure is inadmissible at the defendant's trial.

*Id.* at 847–48 (citations and footnote omitted).

As previously noted, the blood sample in *Justice* was not obtained pursuant to a search warrant. Both the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution protect privacy and possessory interests by prohibiting unreasonable searches and seizures. *Wilson v. State,* 754 N.E.2d 950, 954 (Ind.Ct.App. 2001). As noted in *Schmerber,*

The requirement that a warrant be obtained is a requirement that inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

384 U.S. at 770, 86 S.Ct. 1826 (citations omitted). Searches that occur without prior judicial authorization in the form of a warrant are per se unreasonable, unless an exception to the warrant requirement applies. *Wilson,* 754 N.E.2d at 954.

*Justice* discussed what the implied consent law allows law enforcement officers to do without a search warrant once a person has refused to submit to a chemical test. It did not decide the issue of whether the implied consent law precludes a law enforcement officer from obtaining judicial authorization in the form of a search warrant to obtain a sample of a person's blood once a chemical test has been refused.

Brown essentially argues that the use of a search warrant is precluded because it is not specifically provided for in section 7(b) of the implied consent law, which sets forth what the arresting officer is required to do in the event a driver refuses to submit to a chemical test, nor any other provision of the implied consent law. Brown states: "[a]pplying the well-known principle of statutory construction ... 'expressio unius est exclusio alterius', results in the exclusion of any search warrant mechanism for obtaining bodily fluid or chemical test evidence." (Br. of Appellant at 10.)

The Latin phrase *expressio unius est exclusio alterius* means the enumeration of certain things in a statute necessarily implies the exclusion of all others. *T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 325 (Ind.Ct.App. 1999). The maxim is to be used only as an aid in arriving at the legislative intent. *Sue Yee Lee v. Lafayette Home Hosp., Inc.,* 410 N.E.2d 1319, 1324 (Ind.Ct.App. 1980). It is not to be followed blindly with the effect of overriding or defeating clear legislative intent. *Id.* It has also been said that this maxim may be persuasive in a doubtful case but it is not conclusive. *Id.*

Brown argues "[t]he specificity of the implied consent law as applied to chemical test refusal cases excludes the search warrant mechanism used in the case at bar." (Br. of Appellant at 12.) The legislature, in enacting the implied consent law, conditioned the privilege of driving upon impliedly consenting to submit to chemical tests. Ind.Code § 9–30–6–1. If a driver revokes that consent by refusing to submit to a chemical test, the implied consent law requires the law enforcement officer to obtain the driver's license, submit a probable cause affidavit to the prosecutor, and

send a copy to the BMV. Ind.Code § 9–30–6–7(b). The BMV is required to suspend the person's driving privileges for one year. Ind.Code § 9–30–6–9(a)(1).[5]

██ We do not derive from the implied consent law a legislative intent to preclude a law enforcement officer generally from determining a driver's blood alcohol content, or specifically from obtaining judicial authorization in the form of a search warrant to obtain a sample of a person's blood once a chemical test has been refused. The provisions of the implied consent law do not act either individually or collectively to prevent a law enforcement officer from obtaining a blood sample pursuant to a search warrant. Proscribing the use of a search warrant as a means of obtaining evidence of a driver's intoxication "would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them." *Pena v. State,* 684 P.2d 864, 869 (Alaska 1984) (Compton, J., dissenting).

The implied consent law does not reveal any intent of the legislature to create such a result. Prohibiting the use of a search warrant once a driver has refused to consent to a chemical test would be inconsistent with the implied consent law's underlying goal of protecting the public from the threat posed by the presence of drunk drivers on the highways. We decline to interpret the implied consent law's silence concerning search warrants as a prohibition against them.

Brown cites numerous decisions from other states in support of her contention that Indiana's implied consent law should be interpreted to preclude law enforcement officers from obtaining a blood sample pursuant to a search warrant after a driver has refused to submit to a chemical test. However, each of the implied consent laws interpreted by the decisions Brown cites either currently or at one time specifically provided that when a driver refuses to consent to a chemical test, no test shall be given. *See, e.g., State v. Adee,* 241 Kan. 825, 740 P.2d 611, 614 (1987); *State v. DiStefano,* 764 A.2d 1156, 1161 (R.I.2000); *State v. Hitchens,* 294 N.W.2d 686, 687 (Iowa 1980). Accordingly, those courts were interpreting a provision or changes to a provision in their states' implied consent laws that specifically stated *no test shall be given.* Indiana's implied consent law, however, does not now nor has it previously contained such a provision to interpret. Indiana's implied consent law does not preclude the use of a search warrant once a driver has refused to submit to a chemical test.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

**5.** Additionally Ind.Code § 9–30–6–3(b) provides that "[a]t any proceeding under this chapter, IC 9–30–5, or IC 9–30–9, a person's refusal to submit to a chemical test is admissible into evidence." Brown argues that "the use of chemical test refusal as evidence to be submitted at trial is a statutory expression that there will *not* be a chemical test for the jury to consider.... This specific expression of how a refusal is to be treated for evidentiary purposes excludes the introduction of a chemical test by some other means not authorized within the implied consent statutes. Otherwise, the refusal evidence becomes meaningless." (Br. of Appellant at 11) (emphasis in original). We decline to infer that the legislature must have intended to preclude the use of a search warrant to obtain chemical test evidence simply because it has provided that a chemical test refusal is admissible into evidence.