

FILED
Dec 31 2015, 9:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Andrew M. Barker
Russell B. Cate
Campbell Kyle Proffitt LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.A., <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | December 31, 2015 <br><br> Court of Appeals Case No. <br> 48A02-1504-MI-215 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Dennis D. Carroll, Judge <br><br> Trial Court Cause No. <br> 48C06-1408-MI-379 |

**Najam, Judge.**

## Statement of the Case

D.A. appeals the trial court's denial of his request to apply an expungement order to the records of a civil forfeiture proceeding that arose from the same facts underlying his now-expunged convictions. D.A. raises a single issue for our review, which is an issue of first impression: whether our expungement statutes apply to the records of civil forfeiture proceedings. We hold that, on these facts, the trial court erred when it did not apply the expungement order to the records of D.A.'s civil forfeiture proceeding.[1]

## Facts and Procedural History

On May 9, 2002, the Madison County Drug Task Force ("MCDTF") set up a controlled drug buy in which a confidential informant purchased cocaine from D.A. The MCDTF set up additional controlled buys on May 15 and May 17. Subsequently, MCDTF officers arrested D.A. and seized $1,340 in United States currency from him. Six-hundred and twenty dollars were marked currency that the MCDTF had used in its controlled drug buys. D.A. used the remaining amount, $720, to facilitate the commission of D.A.'s dealing offenses, or that amount was the proceeds from those offenses.

Following his arrest, the State charged D.A. with dealing and possession offenses. On February 28, 2003, D.A. was convicted of dealing in marijuana, as a Class C felony, and possession of cocaine, as a Class C felony, under

---

[1] We held oral argument on December 14, 2015, in the Court of Appeals Courtroom.

criminal cause number 48D01-0210-FB-490 ("FB-490"). Meanwhile, the State also filed a civil forfeiture action against the $720 seized from D.A. during his arrest for the criminal offenses. The State's forfeiture action was filed under the miscellaneous criminal cause number 48D01-0206-MC-292 ("MC-292"). Following D.A.'s convictions for the underlying offenses, on October 21, 2003, the trial court ordered the $720 forfeited either because D.A. had used that money to facilitate his commission of the underlying offenses or because that money was the proceeds from those offenses.

[4] In August of 2014, D.A. filed a petition to expunge the records of his convictions in cause number FB-490. The trial court granted D.A.'s petition. Thirteen days later, D.A. requested the court to amend its expungement order to include and expunge the records of cause number MC-292, the civil forfeiture proceeding. After a hearing, the court denied D.A.'s request that the expungement order also be applied to the records of the civil forfeiture proceeding. This appeal ensued.

## Discussion and Decision

### *Whether D.A. Procedurally Defaulted on His Request for the Trial Court to Extend its Expungement Order*

[5] D.A. appeals the denial of his request to extend the expungement order to the records of the civil forfeiture proceeding. However, we first discuss the State's assertion that D.A. procedurally defaulted on his request for the expungement of the civil forfeiture records. Although the State did not object to D.A.'s additional filing in the trial court, we generally may affirm the trial court's

judgment on any basis supported by the record. *E.g.*, *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 322 n.5 (Ind. Ct. App. 2009), *trans. denied*. With that general principle in mind, the State contends that this court should affirm the trial court's denial of D.A.'s request for "additional expungement," *see* Appellant's App. at 2, because D.A.'s request was equivalent to filing a second expungement petition, which is generally prohibited, *see* Ind. Code § 35-38-9-9(h) (2014).[2]

[6] But we cannot agree with the State's premise that this is a valid basis on which this court may affirm the trial court's judgment. "It is well settled that a complaining party has a duty to direct the trial court's attention to a defective filing, and failure to raise an objection constitutes waiver on appeal." *Handy v. P.C. Bldg. Materials, Inc.*, 22 N.E.3d 603, 607 n.4 (Ind. Ct. App. 2014) (citing *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990)), *trans. denied*. Moreover, a party "may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Id.* (quotation marks omitted). Here, the State had the opportunity to object to D.A.'s additional filing, but it did not. Thus, this issue was not presented to the trial court. Indeed, in the trial court the State referred to D.A.'s filing as a motion to

---

[2] All statutory references are to the statutes in effect at the time D.A. filed his petition for expungement. *See, e.g.*, *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 215 (Ind. 2012). In his Reply Brief, D.A. asserts that the State erroneously relied on the current version of Indiana Code Section 35-38-9-9 for its argument that D.A. procedurally defaulted rather than the version in effect at the time D.A. filed his petition. But the statute in effect at the time D.A. filed his petition explicitly limited a petitioner to one expungement petition "during the petitioner's lifetime." I.C. § 35-38-9-9(h).

correct error, which is generally permitted under Indiana Trial Rule 59. *See* Tr. at 17. The State cannot now argue that the filing was defective. *Handy*, 22 N.E.3d at 607 n.4. In other words, the State cannot use its own failure to object, whether that failure was intentional or inadvertent, as a sword to preempt our review of D.A.'s appeal. We conclude that the State's argument regarding the timing of D.A.'s filing is not properly before us. *Id.*

### *Statutory Interpretation*

[7]     We thus turn to the merits of this appeal, which require us to interpret the Indiana Code.

> Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. *State v. Prater*, 922 N.E.2d 746, 749 (Ind. Ct. App. 2010), *trans. denied*. "The first rule of statutory construction is that '[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense.'" *Id.* (quoting Ind. Code § 1-1-4-1(1)) (alteration original). Further, courts may not "engraft new words" onto a statute or add restrictions where none exist. *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013).

> Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation. *Curley v. Lake Cnty. Bd. of Elections & Registration*, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008), *trans. denied*. "When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction." *Prater*, 922 N.E.2d at 748. "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Curley*, 896 N.E.2d at 34 (quotations omitted). "If a statute is susceptible to multiple

interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent." *Id.* (quotation omitted). "We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Prater*, 922 N.E.2d at 748. "[W]e must consider not only what the statute says but what it does not say." *Curley*, 896 N.E.2d at 37. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *Prater*, 922 N.E.2d at 750.

*Fight Against Brownsburg Annexation v. Town of Brownsburg*, 32 N.E.3d 798, 805-06 (Ind. Ct. App. 2015) (alterations in original).

[8]     The essential question in this appeal is whether our expungement statutes apply narrowly only to "conviction records" or apply more broadly to any records that "relate to . . . [a] conviction." *See* I.C. § 35-38-9-4(c). Our expungement statutes are located within Indiana Code Chapter 35-38-9, which is titled "Sealing and Expunging Conviction Records" and consists of eleven sections. Sections 1 through 5 of that Chapter permit arrestees and defendants to petition an Indiana trial court for expungement of certain records. For example, D.A. filed his petition under Section 4,[3] which in relevant part states:

> (c) Not earlier than the later of eight (8) years from the date of conviction, or three (3) years from the completion of the person's

---

[3] In his Reply Brief and at oral argument, D.A. asserted that, following expungement, his Class C felony convictions were reduced to Class D felonies and, therefore, different expungement statutes should now apply to him. But we are a court of review, and both D.A. and the trial court expressly relied on the expungement statutes that apply to Class C felony convictions. We review the trial court's judgment accordingly.

sentence, unless the prosecuting attorney consents in writing to an earlier period, *the person convicted of the felony may petition a court to expunge all conviction records, including records contained in:*

> *(1) a court's files;*
>
> *(2) the files of the department of correction;*
>
> *(3) the files of the bureau of motor vehicles; and*
>
> *(4) the files of any other person who provided treatment or services to the petitioning person under a court order;*

*that relate to the person's felony conviction.*

(d) A person who files a petition to expunge conviction records shall file the petition in a circuit or superior court in the county of conviction.

(e) If the court finds by a preponderance of the evidence that:

> (1) the period required by this section has elapsed;
>
> (2) no charges are pending against the person;
>
> (3) the person has paid all fines, fees, and court costs, and satisfied any restitution obligation placed on the person as part of the sentence; and
>
> (4) the person has not been convicted of a crime within the previous eight (8) years (or within a shorter period agreed to by the prosecuting attorney if the prosecuting attorney has consented to a shorter period under subsection (c));

*the court may order the conviction records described in subsection (c) marked as expunged in accordance with section 7 of this chapter.* A person whose records have been ordered marked as expunged

under this section is considered to have had the person's records expunged for all purposes other than the disposition of the records.

*Id.* (emphases added).

[9]     Also relevant to this appeal is Section 7,[4] which discusses the effect of expunging records and states:

> (a) This section applies only to a person who has filed a petition for expungement under section 4 or 5 of this chapter and whose records have been ordered marked as expunged.
>
> (b) *The court records and other public records relating to the arrest, conviction, or sentence of a person whose conviction records have been marked as expunged remain public records. However, the court shall order that the records be clearly and visibly marked or identified as being expunged.* A petition for expungement granted under sections 4 through 5 of this chapter does not affect an existing or pending driver's license suspension.
>
> (c) The state police department, the bureau of motor vehicles, and any other law enforcement agency in possession of records that relate to the conviction ordered to be marked as expunged shall add an entry to the person's record of arrest, conviction, or sentence in the criminal history data base stating that the record is marked as expunged.

---

[4] Again, in his Reply Brief and at oral argument, D.A. asserted that Section 6 applied to him because his convictions are now Class D felonies. But as D.A. did not make these arguments to the trial court we do not consider them on appeal.

I.C. § 35-38-9-7 (emphasis added). And "[a] petition for expungement and an order for expungement are confidential." I.C. § 35-38-9-10(i).

[10] As we have recognized, the policy underlying our expungement statutes is to "give individuals who have been convicted of certain crimes a second chance by not experiencing many of the stigmas associated with a criminal conviction . . . ." *J.B. v. State*, 27 N.E.3d 336, 339 (Ind. Ct. App. 2015). To that end, Section 10 provides:

> (b) It is unlawful discrimination for any person to:
>
> > (1) suspend;
> >
> > (2) expel;
> >
> > (3) refuse to employ;
> >
> > (4) refuse to admit;
> >
> > (5) refuse to grant or renew a license, permit, or certificate necessary to engage in any activity, occupation, or profession;
> >
> > or
> >
> > (6) otherwise discriminate against;
>
> any person because of a conviction or arrest record expunged or sealed under this chapter.

(c) The civil rights of a person whose conviction has been expunged shall be restored, including the right to vote, to hold public office, and to serve as a juror.

(d) In any application for employment, a license, or other right or privilege, a person may be questioned about a previous criminal record only in terms that exclude expunged convictions or arrests, such as: "Have you ever been arrested for or convicted of a crime that has not been expunged by a court?". [sic]

(e) *A person whose record is expunged shall be treated as if the person had never been convicted of the offense.* However, upon a subsequent arrest or conviction for an unrelated offense, the prior expunged conviction:

> (1) may be considered by the court in determining the sentence imposed for the new offense;

> (2) is a prior unrelated conviction for purposes of:

>> (A) a habitual offender enhancement; and

>> (B) enhancing the new offense based on a prior conviction;

> and

>> (3) may be admitted as evidence in the proceeding for a new offense as if the conviction had not been expunged.

(f) Any person that [sic] discriminates against a person as described in subsection (b) commits a Class C infraction and may be held in contempt by the court issuing the order of

expungement or by any other court of general jurisdiction. Any person may file a written motion of contempt to bring an alleged violation of this section to the attention of a court. In addition, the person is entitled to injunctive relief.

(g) In any judicial or administrative proceeding alleging negligence or other fault, an order of expungement may be introduced as evidence of the person's exercise of due care in hiring, retaining, licensing, certifying, admitting to a school or program, or otherwise transacting business or engaging in activity with the person to whom the order of expungement was issued.

(h) A conviction that has been expunged under this chapter is not admissible as evidence in an action for negligent hiring, admission, or licensure against a person or entity who relied on the order.

I.C. § 35-38-9-10 (emphasis added).

[11]  The first question we must consider is whether our expungement statutes are ambiguous with respect to the scope of the records to be expunged. We must conclude that they are. Again, Section 4 states that a person "may petition a court to expunge all *conviction records*, including records contained in[] a court's files . . . that *relate* to the person's felony conviction." I.C. § 35-38-9-4 (emphases added). This language is ambiguous. The phrase "conviction records" appears limiting, but the phrase "records . . . that *relate* to the person's felony conviction" appears broad.

[12]  Nonetheless, the State asserts that "[t]he plain language of [Section 4] limits expungement to records of a criminal arrest or conviction." Appellee's Br. at 7.

That is certainly a reasonable interpretation of "conviction records." *See* I.C. § 35-38-9-4. But the State's argument ignores and renders meaningless the additional statutory directive to expunge all records "contained in[] a court's files . . . that *relate* to the person's felony conviction." *Id.* (emphasis added). We will not read that additional directive as meaningless surplusage; rather, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *Prater*, 922 N.E.2d at 750.

[13] Accordingly, we interpret Section 4 to require the court to expunge both a person's "conviction records," such as a judgment of conviction, *and* any other records "that relate to the person's felony conviction." I.C. § 35-38-9-4. And we conclude that where, as here, a civil forfeiture is ancillary to and premised on criminal activity for which the defendant was convicted, the records of that civil forfeiture "relate" to that conviction. Indeed, "before a forfeiture occurs, the State must demonstrate that the property sought in forfeiture was used to facilitate [certain] criminal activities." *Katner v. State*, 655 N.E.2d 345, 348 (Ind. 1995). Accordingly, D.A. was entitled to have the records of his civil forfeiture expunged along with his underlying conviction. I.C. § 35-38-9-4.

[14] Still, the State argues that civil forfeiture records can never "relate" to a conviction simply because they are civil rather than criminal records. The State's argument here is intertwined with its reading of "conviction records," which we have already rejected. The statutory language that requires a court to expunge records that "relate" to a conviction makes no distinction between criminal records that relate to a conviction and civil records that relate to a

conviction. Indeed, the statute refers broadly to "a court's files," not specifically to, for example, the court of conviction's files. It is not this court's place to "engraft new words" onto a statute or add restrictions where none exist. *Kitchell*, 997 N.E.2d at 1026.

[15] At oral argument, the State argued that it is not clear that the civil forfeiture in MC-292 was based on the same criminal activity underlying D.A.'s convictions in FB-490. But the State raises this argument for the first time on appeal (and, at that, for the first time at the oral argument). In the trial court, D.A. expressly asserted that the civil forfeiture in MC-292 "directly related to [the] criminal prosecution" in FB-490. Tr. at 4. The State could have presented evidence to challenge that assertion and did not. We will not entertain this argument on appeal in the first instance.

[16] Finally, the State argues that, even if we agree with D.A.'s arguments on the merits, this court "cannot grant" D.A. the relief he requests because "all records expunged pursuant to [Section 4] remain public record. The only change is that the records are marked or identified as being expunged." Appellee's Br. at 9-10. But the General Assembly clearly determined that such annotations are worthwhile. I.C. § 35-38-9-7. As such, we reject the State's argument.

[17] The expungement statutes are inherently remedial and, as such, should be liberally construed to advance the remedy for which they were enacted. *Brown v. State*, 947 N.E.2d 486, 490 (Ind. Ct. App. 2011). The purpose of our expungement statutes is to "give individuals who have been convicted of certain

crimes a second chance by not experiencing many of the stigmas associated with a criminal conviction . . . ." *J.B.*, 27 N.E.3d at 339. That purpose would be frustrated by providing only incomplete or partial relief. Accordingly, we hold that, where, as here, a civil forfeiture is ancillary to a criminal conviction and the nexus between the civil forfeiture and the criminal conviction is established, a defendant may petition the trial court to expunge the records of that civil forfeiture along with the records of the related criminal conviction. In other words, where the factual basis for a criminal conviction and a civil forfeiture are the same, the records of the civil forfeiture proceeding relate to the person's conviction for purposes of our expungement statutes. Because the trial court erred when it concluded otherwise, we reverse the trial court's judgment and remand for further proceedings.

[18]    Reversed and remanded.


Kirsch, J., concurs.

Barnes, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

D.A.,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

Court of Appeals Case No.
48A02-1504-MI-215

**Barnes, Judge, dissenting.**

I respectfully dissent. I certainly understand, as the majority recognizes, that the overarching purpose of the expungement statutes is to remove "stigmas" associated with criminal convictions and to allow a fresh start for persons who meet the statutory requirements. *J.B. v. State*, 27 N.E.3d 336, 339 (Ind. Ct. App. 2015). However, I do not believe we are free to add language to the statutes to permit the expungement of records related to civil forfeitures.

First, although the majority does not find the distinction to be relevant, it is well settled that forfeiture proceedings such as the one D.A. seeks to have expunged are civil in nature, not punitive or criminal. *See, e.g.*, *Katner v. State*, 655 N.E.2d 345, 348 (Ind. 1995). Indeed, it is possible for a forfeiture to occur even if the

person whose property is forfeited has never been convicted or even charged with a crime. *Serrano v. State*, 946 N.E.2d 1139, 1141 (Ind. 2011). What that means for purposes of this case is that, if D.A. had never been convicted of a crime but merely had his property forfeited, there is no possible basis upon which he could have sought expungement of the forfeiture records. In other words, a person who is subject to only forfeiture has no right to expungement, while a person who is also convicted of a related crime is entitled to expungement under the majority's holding. It does not seem fair or equitable to me that a person also convicted of a crime is entitled to preferential treatment over a person who is *not* convicted of a crime.

[21] Second, I note the general rule of statutory construction, "expressio unius est exclusio alterius," which means that the enumeration of certain things in a statute implies the exclusion of all other things. *Brown v. State*, 774 N.E.2d 1001, 1006 (Ind. Ct. App. 2002), *trans. denied*. Although not conclusive, it can be a useful aid in discerning legislative intent. *Id.* The expungement statutes were first enacted in 2013 and represented a sea change in Indiana criminal law. They have been amended twice since then. I presume the legislature carefully considered these statutes. At no time did it see fit to include forfeiture proceedings within the enumerated list of records subject to expungement, which expressly includes Department of Correction, Bureau of Motor Vehicles, and treatment records. I believe we should not add civil forfeitures to the list of records to be expunged by judicial action. If the legislature chooses to act on civil forfeitures, so be it.

[22] Finally, I believe it is appropriate to consider the practical effect of expungement. As noted by the majority, despite arguments by D.A. to the contrary in his reply brief and at oral argument, the trial court addressed his expungement request as falling under Indiana Code Section 35-38-9-4. An expungement under this section does not result in sealing of the conviction records; instead, they remain public records. Ind. Code § 35-38-9-7(b). Thus, the fact of D.A.'s conviction will remain readily available to the public. Even if a conviction record is sealed under Indiana Code Section 35-38-9-6, in this day and age it will be practically impossible to prevent internet access to a person's criminal record. In other words, the expungement cannot as a practical matter literally wipe a person's slate clean in the eyes of an intrusive and technologically-savvy public. The effect of expungement, despite this public access and knowledge, comes through Indiana Code Section 35-38-9-10, which prohibits discrimination against someone based on an expunged criminal conviction. D.A. is entitled to this protection, regardless of whether his civil forfeiture record is expunged. I conclude he has received all the protection to which he is entitled by expungement of records *directly* related to his conviction and that he is not additionally entitled to expungement of the civil forfeiture judgment. These statutes, in my view, promise the erasure of a conviction, not anonymity and not more than the statutory language speaks to.

[23] For these reasons, I dissent and vote to affirm the trial court.