SLIP OPINION

Cite as 2015 Ark. 222

# SUPREME COURT OF ARKANSAS

No. CR-14-865

| | |
|---|---|
| ERNIE CHARLES METZNER <br> APPELLANT <br><br> V. <br><br> STATE OF ARKANSAS <br> APPELLEE | **Opinion Delivered** May 21, 2015 <br><br> APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CR-2013-1739-2] <br><br> HONORABLE BRAD KARREN, JUDGE <br><br> <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

In a bench trial, the Circuit Court of Benton County found appellant Ernie Charles Metzner guilty of driving while intoxicated, second offense, and guilty of violating the implied-consent law. As a consequence, the circuit court sentenced him to thirty days in jail with twenty-three days suspended and fined him $750, plus court costs. In addition, the court ordered Metzner to comply with Level II Decision Point recommendations. For reversal, Metzner argues that the circuit court erred in denying his motion to suppress the results of a blood-alcohol test taken pursuant to a search warrant, contending that the implied-consent statutes prohibit the issuance of a warrant to obtain a chemical test. This court affirms Metzner's conviction and sentence.

The record reflects that on March 16, 2013, Deputy Lynn Hahn of the Benton County Sheriff's Office conducted a sobriety checkpoint at 54th Street and Stoney Brook Road in Rogers, Arkansas. During the course of his duties, Hahn arrested Metzner for driving while

intoxicated and transported him to the Bentonville Police Department for a breath-alcohol test. Metzner refused to submit to the test. Hahn then applied for and obtained a search warrant for the collection of a sample of Metzner's blood for testing. Under the authority of the warrant, Hahn took Metzner to Northwest Medical Center for the extraction of Metzner's blood. The result of the test showed a blood-alcohol content of .15%.

Prior to trial, Metzner moved to suppress the result of the blood test. He argued that the implied-consent law prohibits the taking of a blood sample pursuant to a search warrant when an accused refuses to take a chemical test requested by a law enforcement officer. In response, the State asserted that the evidence obtained as a result of the search warrant was not seized in violation of the implied-consent statutes and that the seizure did not otherwise offend Metzner's rights guaranteed by the Fourth Amendment to the United States Constitution. The parties briefed the issue and argued their positions at a hearing. The circuit court subsequently entered an order denying the motion to suppress. After reviewing the relevant law, the circuit court concluded that the General Assembly did not intend to prohibit all possible chemical testing after an accused refuses a chemical test and did not intend to afford greater rights to a drunk driver than is constitutionally required. With that ruling, the case proceeded to trial. Metzner waived his right to be tried before a jury.

At the bench trial, the State introduced into evidence the result of the blood test and presented the testimony of Deputy Hahn. Hahn testified that at 2:45 a.m., Metzner approached the checkpoint driving a Ford Mustang and that Metzner stopped the vehicle approximately 150 feet short of the roadblock. Hahn motioned the vehicle to move forward,

and when Metzner rolled down the window, Hahn detected the odor of intoxicants and cologne, and he saw a bottle of cologne on the passenger seat of the car. Hahn testified that, based on his experience as an officer, cologne is typically used to mask the odor of alcohol or drugs. Hahn further testified that he advised Metzner that he could smell the odor of intoxicants but that Metzner denied that he had been drinking. Hahn then asked Metzner to drive the vehicle to the curb. He said that Metzner stopped well short of the curb, such that the vehicle was blocking the street. Hahn asked Metzner to reposition the vehicle. He said that Metzner pulled up a little farther but that the vehicle remained several feet away from the curb.

Hahn testified that he approached Metzner again and noticed that his eyes were bloodshot and watery. Metzner refused Hahn's request to take a portable breath test, and he also initially declined Hahn's command to exit the car. After Metzner agreed to step out of the vehicle, he used the door to hoist himself out of the car. Hahn stated that Metzner was hanging onto the door for balance until he had Metzner close the door. Hahn then asked Metzner to walk to the front of the vehicle. Hahn testified that Metzner displayed poor balance and that he used his right hand to steady himself while walking to the front of the vehicle. Hahn stated that, while standing at the front of the vehicle, Metzner was swaying in a circular motion. Metzner again denied that he had been drinking and refused to perform any field-sobriety tests. Hahn testified that he placed Metzner under arrest for driving while intoxicated based on Metzner's driving, his failure to properly park, the odor of intoxicants, his bloodshot and watery eyes, along with his swaying and poor balance.

3

Hahn further testified that he had to hold onto Metzner's arm when walking him to the patrol car out of fear that Metzner might fall. Hahn also moved Metzner's vehicle out of the lane of traffic because it was still blocking the roadway. During the inventory of Metzner's vehicle, Hahn found a cool beer bottle with liquid in it. Hahn stated that he advised Metzner of his rights under the implied-consent law and that Metzner did not respond to the question whether he would take a breath test. Hahn testified that, at the police station, Metzner stumbled over his own feet while walking on a smooth floor. He said that he had to hold onto Metzner to keep him from falling as they proceeded to the room where the intoximeter was located. Finally, Hahn stated that Metzner refused to take the breath test because he would not respond to the request to take the test.

Based on Hahn's testimony, the circuit court found Metzner guilty of driving while intoxicated, second offense, and of refusal to submit. The circuit court entered its sentencing order reflecting the court's findings and sentence on June 19, 2014. This appeal followed.

As his sole issue on appeal, Metzner contends that the circuit court erred by denying his motion to suppress the results of the blood-alcohol test. He argues that, according to Arkansas Code Annotated section 5-65-205(a) (Repl. 2005), when a person under arrest refuses a law enforcement officer's request to submit to a chemical test, the statute provides that "no chemical test shall be given." Metzner asserts that this language prohibits the issuance of a warrant to collect a blood sample for testing. In opposition to this argument, the State asserts that the implied-consent laws authorize warrantless searches based on implied consent and that the statute proscribes only the warrantless search when an accused refuses to

SLIP OPINION

submit to a chemical test at the request of a law enforcement officer. Further, the State contends that, because the statute addresses only the issue of implied consent and warrantless searches, it cannot effectively be argued that the statute contains a prohibition against chemical testing pursuant to a valid search warrant.

We begin by recounting a few basic principles. The collection and testing of a person's blood, breath, or urine constitutes a search under the Fourth Amendment to the United State's Constitution, requiring a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989); *see also Hoyle v. State*, 371 Ark. 495, 268 S.W.3d 313 (2007). A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 345 (1967); *McDonald v. State*, 354 Ark. 216, 119 S.W.3d 41 (2003). In *Schmerber v. California*, 384 U.S. 757 (1966), the Supreme Court applied the emergency exception based on the threatened destruction of evidence to hold that the warrantless seizure of a blood sample for blood–alcohol testing while the accused was receiving treatment for injuries sustained in a car accident was justified under those circumstances. However, the Court subsequently refined its holding to *Schmerber* by observing that, "[i]n those drunk driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1561 (2013).

Another established exception to the warrant requirement is a search that is based on consent. *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004); *Hamm v. State*, 296 Ark. 385,

5

757 S.W.2d 932 (1988). The Arkansas implied-consent laws are based on this exception, as they are founded on the principle that "[a]ny person who operates a motor vehicle or is in actual physical control of a motor vehicle in this state is deemed to have given consent . . . to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his or her breath or blood." Ark. Code Ann. § 5-65-202(a) (Repl. 2005). We have observed that the intent of the General Assembly in passing these laws was to mandate alcohol testing for a person stopped by a law enforcement officer when an officer has reasonable cause to believe that the driver is intoxicated. *See Parsons v. State*, 313 Ark. 224, 853 S.W.2d 276 (1993).

Our implied-consent law also recognizes the right of a person to withdraw this consent. "If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in § 5-65-202, *no chemical test shall be given*." Ark. Code Ann. § 5-65-205(a) (emphasis supplied). The penalty imposed for refusing to take the chemical test at the direction of a law enforcement officer is the suspension or revocation of the arrested person's driving privilege. Ark. Code Ann. § 5-65-205(b). In addition, this court has held that evidence of an accused's refusal to submit to a chemical test can be properly admitted as circumstantial evidence showing a knowledge or consciousness of guilt. *Medlock v. State*, 332 Ark. 106, 964 S.W.2d 196 (1998) (citing *Spicer v. State*, 32 Ark. App. 209, 799 S.W.2d 562 (1990)).

The question raised in this appeal is an issue of first impression in Arkansas. States with similarly worded implied-consent statutes are divided on the question whether the language,

stating essentially that "no test shall be given," when the accused refuses the chemical test requested by an officer precludes the collection of a blood sample based on a search warrant. In support of his argument, Metzner relies primarily on the decision rendered by the Supreme Court of Georgia in *State v. Collier*, 612 S.E.2d 281 (Ga. 2005).[1] There, the statute under consideration stated that "no test shall be given" if the person under arrest refuses, upon request, to submit to a chemical test designated by a police officer. The Georgia court held that police may not use a search warrant to circumvent the plain statutory bar to a forced chemical test following a suspect's refusal of the police-requested testing. In so holding, the court focused on the mandatory command reflected by the legislature's use of the word "shall," and reasoned that the sanctions imposed by the legislature for the refusal to submit to a chemical test did not include being compelled to submit to testing through the use of a search warrant. The Supreme Court of Iowa arrived at the same conclusion in *State v. Hitchens*, 294 N.W.2d 686 (Iowa 1980), as did the Alaska Supreme Court in *Pena v. State*, 684 P.2d 864 (Alaska 1984).

Courts in other jurisdictions whose statutes contain comparable language have reached the opposite result. In *State v. Stone*, 728 S.E.2d 155 (W. Va. 2012), the Supreme Court of Appeals of West Virginia construed the language of its implied-consent statute that "the tests shall not be given" upon refusal as referring only to the tests requested by law enforcement officers pursuant to the statute and held that the phrase did not restrict the State's ability to

---

[1]The decision in *Collier* was abrogated by the Georgia Legislature the following year by an amendment to Georgia's implied-consent statute. *See McAllister v. State*, 754 S.E.2d 376 (Ga. Ct. App. 2014).

seek a search warrant to obtain evidence, including blood samples, in criminal traffic offenses. In this opinion, the court overruled its previous decision holding otherwise in *State v. McClead*, 566 S.E.2d 652 (W. Va. 2002).

The Missouri Court of Appeals also held that its statutory command of "none shall be given" applies only to the warrantless search authorized at the direction of law enforcement officials. *State v. Smith*, 134 S.W.3d 35 (Mo. Ct. App. 2003). The court of appeals stated,

> Because of the use of the passive voice in the clause "none shall be given," that clause does not specify who is prohibited from giving a test. Accordingly, in construing this provision we must consider the context and related clauses of this statute. *State v. Campbell*, 564 S.W.2d 867, 869 (Mo. banc 1978). We therefore look at the context in which "none shall be given" is used to determine to whom this passive command is directed. See State ex rel. *Holterman v. Patterson*, 24 S.W.3d 784, 786 (Mo. App.2000). When we read Section 577.041.1 with Section 577.020.1, as we must, *Eyberg v. Director of Revenue*, 935 S.W.2d 376, 379 (Mo. App.1996), the only actor to whom this clause can be directed is a law enforcement officer. This is because the tests allowed pursuant to Section 577.020 are those "administered at the direction of the law enforcement officer." Section 577.020.1. We have interpreted the phrase "none shall be given" to mean that a law enforcement officer is without authority to administer the test once it is refused, *Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo. App.1993), and our courts have held that "law enforcement officers are significantly limited" by this provision. *Trumble*, 844 S.W.2d at 24. To hold that this clause prohibits courts from issuing search warrants would introduce a new subject matter unrelated in kind to the remainder of the statute. *See Campbell*, 564 S.W.2d at 870. The command that "none shall be given" is addressed only to the authority of law enforcement officers to proceed with a warrantless test under Chapter 577.

> The Missouri Implied Consent Law was enacted to codify the procedures under which a law enforcement officer could obtain bodily fluids for testing by consent without a search warrant. It provides administrative and procedural remedies for refusal to comply. Because it is directed only to warrantless tests authorized by law enforcement officers, it does not restrict the state's ability to apply for a search warrant to obtain evidence in criminal cases pursuant to section 542.276 RSMo (2000) or a court's power to issue a search warrant under section 542.266 RSMo (2000).

*Smith,* 134 S.W.3d at 40.

In the case at bar, this court must decide whether the laws of this State prohibit an officer from obtaining a warrant once an accused declines the test requested by the officer under the implied-consent law. The issue before us is one of statutory interpretation, which is a question that we consider de novo without giving deference to the circuit court's interpretation. *See State v. Thomas*, 2014 Ark. 362, 439 S.W.3d 690. We construe criminal statutes strictly, resolving any doubts in favor of the defendant. *Eli Hart v. State*, 2014 Ark. 250. Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *May Constr. Co., Inc. v. Town Creek Constr. & Dev., LLC*, 2011 Ark. 281, 383 S.W.3d 389. However, we will not interpret a statute, even a criminal one, so as to reach an absurd conclusion that is contrary to legislative intent. *Walden v. State*, 2014 Ark. 193, 433 S.W.3d 864. We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Eli Hart*, *supra*. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (2003). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect derived from the whole. *Walden*, *supra*.

In relevant part, section 5-65-205(a) provides, "If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law

SLIP OPINION

enforcement agency, as provided in § 5-65-202, no chemical test shall be given[.]" When viewed in isolation, the phrase "no chemical test shall be given" seemingly supports Metzner's position that no test whatsoever may be given. However, when viewed in its proper context by considering the language preceding the phrase, it is abundantly clear that the phrase specifically refers only to the test requested by an officer pursuant to section 5-65-202, which authorizes a warrantless test based on implied consent. Therefore, construing the plain language of section 5-65-205(a) as a whole, it is apparent that the test that may not be given is limited to the warrantless test authorized by section 5-65-202. Furthermore, section 5-65-205(a) contains no language addressing the issuance of a search warrant based upon probable cause when an accused refuses the test requested by an officer. To hold that the statute, in its silence, contains a prohibition against the issuance of a search warrant would violate the canon of strict construction "that nothing can be taken as intended that is not clearly expressed." *White v. State*, 260 Ark. 361, 366, 538 S.W.2d 550, 553 (1976). This court may not infer intent by adding words that are not found in the statute. Moreover, proscribing the use of a search warrant as a means of obtaining evidence of a driver's intoxication "would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them." *Brown v. State*, 774 N.E.2d 1001, 1007 (Ind. Ct. App. 2002) (quoting *Pena v. State*, 684 P.2d at 869 (Compton, J., dissenting). To interpret the statute to afford DWI suspects more protection than other criminal defendants produces an absurd result that is contrary to the plain language of the statute. *See Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002).

SLIP OPINION

Metzner's conviction is affirmed.

Affirmed.

WYNNE, J., concurs in part and dissents in part.

BAKER and HART, JJ., dissent.

**ROBIN F. WYNNE, Justice, concurring in part and dissenting in part.** I agree with the majority's conclusion to affirm appellant's convictions. However, because I believe that the trial court erred by denying appellant's motion to suppress the blood-alcohol testing results, I would affirm the trial court's sentencing order on the basis that the trial court's error was harmless in light of the other evidence at trial that appellant was guilty of driving while intoxicated.

Arkansas Code Annotated section 5-65-205(a)(1) (Supp. 2013) states,

> If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in § 5-65-202, no chemical test shall be given, and the person's motor vehicle operator's license shall be seized by the law enforcement officer, and the law enforcement officer shall immediately deliver to the person from whom the motor vehicle operator's license was seized a temporary driving permit, as provided by § 5-65-402.

At issue in this appeal is the impact of the phrase "no chemical test shall be given" in the above-quoted statutory language. Appellant contends that the inclusion of that language means that no test may be conducted under any circumstances unless provided for by another statute, such as Arkansas Code Annotated section 5-65-208, which mandates testing following an accident that results in a loss of human life or raises reason to believe that loss of human life will occur. The trial court found that section 5-65-205(a)(1) does not preclude obtaining a

sample for testing pursuant to a warrant because the legislature did not intend this result when it passed the statute. The State argues, in this same vein, that section 5–65–205 was meant to apply only to warrantless seizures of a sample for testing.

Although this case presents an issue of first impression in Arkansas, other states have considered similar arguments involving substantially similar statutory language and have reached different conclusions. In *State v. Smith*, 134 S.W.3d 35 (Mo. Ct. App. 2003), a Missouri Court of Appeals, when considering this same issue under the refusal provision of Missouri's implied-consent statute, which stated that if a person under arrest for suspicion of DWI refused to submit to a test then "none shall be given," the court held that the clause did not prohibit a court from issuing a search warrant to obtain a sample of a defendant's blood for chemical testing. In so holding, the court stated that the use of the passive voice in the statutory language meant that it was directed at police officers and not a court, meaning that it applied only to warrantless searches by police.[1]

In considering its own refusal provision, which contained the phrase, "none shall be given," the Georgia Supreme Court held that the provision did not allow for the issuance of a warrant to obtain a sample for testing. *State v. Collier*, 612 S.E.2d 281 (Ga. 2005). In so holding, the court stressed the mandatory nature of the use of the word "shall" and noted that the legislature had put into the statute sanctions for a refusal to submit that did not include the

---

[1]In support of its analysis, the majority cites the decision of the Indiana Court of Appeals in *Brown v. State*, 774 N.E.2d 1001 (2002), in which the court held that Indiana's refusal provision did not preclude the issuance of a warrant. However, the statute at issue in that case did not contain a provision stating that upon refusal, no test would be given.

possibility of testing being compelled through a warrant. Of particular interest, the court described the reasoning employed by the Missouri Court of Appeals in *Smith* and a Texas Court of Criminal Appeals in *Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002), as "strained," "unpersuasive," and "made in ignorance of express statutory language."

I agree with the Georgia Supreme Court that the analysis used by the Missouri court in *Smith* is nonsensical. I believe that the reasoning used by the Georgia court in *Collier* and other state courts that have concluded that language similar to that employed in Arkansas's refusal provision prohibits the use of a search warrant to obtain a sample for testing[2] is better reasoned.

As stated above, our refusal provision states that, in the event of a refusal by a defendant, no test shall be given. The first rule of statutory construction, to which all others must yield, is to give effect to the intent of the legislature. *Stapleton v. M.D. Limbaugh Constr. Co.*, 333 Ark. 381, 969 S.W.2d 648 (1998). We first seek the legislative intent by giving the words of the statute their usual and ordinary meaning in common language. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). If the language of the statute is not ambiguous and plainly states the legislature's intent, we will look no further. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

Here, the language employed by the legislature is clear and unambiguous. Therefore,

---

[2]*See State v. DiStefano*, 764 A.2d 1156 (R.I. 2000); *State v. Adee*, 740 P.2d 611 (Kan. 1987); *State v. Berry*, 428 A.2d 1250 (N.H. 1981); *State v. Hitchens*, 294 N.W.2d 686 (Iowa 1980); *State v. Steele*, 601 P.2d 440 (N.M. Ct. App. 1979); *State v. Bellino*, 390 A.2d 1014 (Me. 1978).

the circuit court erred by determining the intent of the legislature to be different than that clearly expressed by the legislature itself in passing the statute. If the legislature did intend for samples to be obtained by warrant, then it should amend the statute to reflect this. Under the statute as currently worded, this court would be required to impose an exception for searches by warrant where none exists.

I further believe that the trial court and State's reliance on Arkansas Rules of Criminal Procedure 12.3 and 18.1 are misplaced. Rule 12.3 allows for a warrantless search of an accused's blood stream, body cavities, and subcutaneous tissues under certain exigent circumstances in order to preserve evidence that might be destroyed in the period of delay needed to obtain a warrant. This was not a warrantless search, and while a search authorized by a warrant is preferable from a due process standpoint, I have concern about using Rule 12.3 to override section 5–65–205(a)(1), as it could open the door for warrantless searches in this type of situation, which would render the statute meaningless. This would be particularly unnecessary in this case, because it is not as though BAC results are the only evidence that can be used to prove DWI. Also, I do not believe that a rule of criminal procedure that generally states what is constitutionally permissible with regard to a search should be used to override a statute that specifically addresses a type of search. Rule 18.1 allows a judicial officer to require a defendant to permit taking samples of blood. However, the commentary to the Rule makes it clear that this Rule applies to taking such samples for identification purposes, which was not the purpose of taking appellant's blood sample. I do not believe that Rule 18.1 applies in this case. For these reasons, I believe that the trial court's ruling on the motion

to suppress was in error.

That, however, is not the end of the necessary analysis. We will not reverse for evidentiary error absent a showing of prejudice. *Bruner v. State*, 2013 Ark. 68, 426 S.W.3d 386. The trial court determined that appellant was guilty of DWI based on the testimony by Sergeant Hahn regarding appellant's physical state and the indications of alcohol use that the sergeant observed. The trial court never mentioned the BAC results in its oral pronouncement of guilt from the bench. The testimony by Sergeant Hahn was sufficient to show, beyond a reasonable doubt, that appellant was impaired due to alcohol consumption while driving his vehicle. Thus, the BAC results were not necessary to obtain the conviction.

I would affirm the sentencing order on the basis that the trial court committed harmless error by denying appellant's motion to suppress.

**JOSEPHINE LINKER HART, Justice, dissenting.** While the majority pays lip service to the requirement that this court strictly construe criminal statutes, it ignored the clearly stated intent of the legislature and substituted its own opinion of how our DWI laws should be structured. Typical of when this court ignores the law, the majority attempts to justify its action as an attempt to avoid an "absurd" result. I respectfully dissent.

When, as in the case before us, a driver is stopped at a sobriety checkpoint, and he or she refuses to submit to a blood test, the plain wording of Arkansas Code Annotated section 5-65-205 applies. The phrase, "no chemical test shall be given," means exactly that. This is a circumstance in which no one, not even the driver himself, has been injured. While it is absolutely an intolerable error in judgment to drive after drinking, and I do not want to in any

way suggest that I am endorsing the practice, this circumstance is the lowest–level violation of our DWI laws. Obviously, this is a less serious offense than the circumstance in which someone has been killed. Our legislature so wisely recognized that, in circumstances where human life has been lost, or is in danger of being lost, allowing a driver to withdraw his or her consent to a chemical test is not reasonable. Ark. Code Ann. § 5-65-208.[1]

_____

[1](a) When the driver of a motor vehicle is involved in an accident resulting in loss of human life or when there is reason to believe death may result, in addition to a penalty established elsewhere under state law, a chemical test of the driver's blood, breath, saliva, or urine shall be administered to the driver, even if fatally injured, to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's body.

(b)(1) The law enforcement agency that investigates an accident described in subsection (a) of this section, the physician in attendance, or any other person designated by state law shall order the chemical test as soon as practicable.

(2)(A) The person who conducts the chemical test under subsection (a) of this section of the driver's blood, breath, saliva, or urine shall forward the results of the chemical test to the Department of Arkansas State Police, and the department shall establish and maintain the results of the chemical tests required by subsection (a) of this section in a database.

(B) The information in the database shall reflect the number of fatal motor vehicle accidents in which:

(i) Alcohol was found to be a factor, with the percentage of alcohol concentration involved;

(ii) Controlled substances were found to be a factor, listing the class of controlled substances so found and their amounts; and

(iii) Both alcohol and controlled substances were found to be factors, with the percentage of alcohol concentration involved, and listing the class of controlled substances so found and their amounts.

(c) The results of the chemical tests required by this section shall be reported to the department and may be used by state and local officials for statistical purposes that do not

I disagree that it is "illogical" for the legislature to forbid all chemical testing after a section 5-65-205 refusal to submit and then mandate it under section 5-65-208. This is not "illogical," but consistent with the requirements of our federal and state constitutions that the search not be unreasonable. Unreasonable means that the government intrusion is disproportionate to the seriousness of the offense. Even where a driver submits to chemical testing, the legislature only permits the police to administer the test if they have "reasonable cause" to believe that the driver has a blood-alcohol level of .08. Ark. Code Ann. § 5-65-20 (Repl. 2005). Moreover, the refusal to submit carries a significant penalty and does not bar the prosecution of a driver for driving while intoxicated.[2] Here, there was substantial evidence of intoxication provided by Metzner's reaction to the sobriety checkpoint, the odor of intoxicants about his person, and his unsteadiness on his feet, and the circuit judge so found this evidence supported the conviction.[3]

reveal the identity of the deceased person or for any law enforcement purpose, including prosecution for the violation of any law.

[2] Our DWI statute provides for alternative ways of convicting a person of operating a motor vehicle while intoxicated. Arkansas Code Annotated section 5-65-103 states as follows:

(a) It is unlawful and punishable as provided in this chapter for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

(b) It is unlawful and punishable as provided in this chapter for any person to operate or be in actual physical control of a motor vehicle if at that time the alcohol concentration in the person's breath or blood was eight-hundredths (0.08) or more based upon the definition of alcohol concentration in § 5-65-204.

[3] Interestingly, the circuit judge who also issued the search warrant for Metzner's blood did not merely pronounce Metzner guilty, as is customary in criminal trials. Instead, the

It is disconcerting that the majority has shirked its duty by ignoring both our federal and state constitutions and interprets a criminal statute in a way that empowers the State to intrude into the lives of its citizens in ways that the people, through their elected legislature, clearly did not authorize.

The Fourth Amendment to the United States Constitution and article 2, section 15, of the Arkansas Constitution are virtually identical. I recognize that impaired driving must be curtailed to preserve the safety and well-being of the people, however, our constitutions recognize that the mechanism for dealing with such conduct—government intrusion into the lives of its citizens—is a powerful and oppressive tool that must be used with great restraint. That is why they guarantee that the people "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The key word is "unreasonable."

The most intrusive of all searches is the search of the interior of a person's body. A search incident to arrest of a person's body is governed by Arkansas Rule of Criminal Procedure 12.3. While Rule 12.3 deals specifically with warrantless searches, it is nonetheless instructive. It states:

> (a) Search of an accused's blood stream, body cavities, and subcutaneous tissues conducted incidental to an arrest may be made only:
>
> (i) if there is a strong probability that it will disclose things subject to seizure and related to the offense for which the individual was arrested; and

---

circuit judge made detailed findings of fact, that did not mention the only basis that the State argued for finding Metzner guilty of DWI—his chemical test showed that his blood–alcohol level exceeded .08. Despite issuing a search warrant for taking Metzer's blood, the circuit judge also found Metzer guilty of refusal to submit to a chemical test.

(ii) if it reasonably appears that the delay consequent upon procurement of a search warrant would probably result in the disappearance or destruction of the objects of the search; and

(iii) if it reasonably appears that the search is otherwise reasonable under the circumstances of the case, including the seriousness of the offense and the nature of the invasion of the individual's person.

(b) Any search pursuant to this rule shall be conducted by a physician or a licensed nurse.

In large part, the "reasonableness" of a search of a person's blood is determined by the circumstances of the case and the seriousness of the offense. The General Assembly determined that intoxication is defined by a blood–alcohol level of 0.8. Ark. Code Ann. § 5-65-103. It also determined how that the blood alcohol content of a person's bloodstream may be determined and under what circumstances it is reasonable to make a test of a driver's blood mandatory. Ark. Code Ann. §§ 5-65-204 & 208. It is not for the courts to usurp the power of the legislature by ignoring the plain wording of a statute.

BAKER, J., joins.

*Norwood & Norwood, P.A.*, by: *Doug Norwood*, *Alison Lee*, and *Cody Dowden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.